### THE WALLACE B. FLINT.

(Circuit Court of Appeals, Second Circuit. April 19, 1904.)

#### No. 199.

1. COLLISION—STEAMER AND TUG WITH TOW CROSSING—FAILURE TO STOP.

A tug proceeding up East river with a car float on each side *held* in fault for a collision with a crossing steamer approaching from her starboard side, for failing to see or signal the steamer until they were within 1,000 feet of each other, and for then continuing on her course until after her second signal of two whistles was not answered, although there was an ebb tide, and she could have stopped without danger to herself or tows.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from a final decree of the United States District Court for the Southern District of New York, awarding to the libelant, the Joy Steamship Company, as owners of the propeller Seaboard, the sum of $12,029.43, one-half of her damages caused by a collision with a car float in tow of the steam tug Wallace B. Flint. The collision occurred at half past 9 on the night of January 2, 1902, about midway between Astoria Ferry Slip and Horn's Hook. The Seaboard was engaged in transporting passengers and freight between New York and Boston, and on the night in question she was upon a trip from Boston to New York. The Flint left Pier 50, East river, with two loaded car floats, bound up the river to the Harlem river. The tide was ebb, the night clear, the wind moderate. The Flint proceeded through the channel east of Blackwell's Island and for some time prior to the collision the tug Transfer No. 9 assisted in towing the floats. She let go, however, previous to the collision. She was absolved from fault by the District Court and her conduct is no longer an issue in the case. When the Flint was some distance below, and the Seaboard some distance above, the Astoria Ferry the ferryboat Steinway came out of her slip and proceeded to her slip at Ninety-Second street, New York City, thus passing between the Seaboard and the Flint. After an exchange of signals between the Seaboard and the ferryboat and after two signals from the Flint, to which the Seaboard did not reply, the collision occurred. The float on the port side of the Flint struck the Seaboard 40 feet

from her stern on the port side, causing the injuries complained of. The court found both vessels at fault and both parties appealed.

The opinion of the District Court is reported in 125 Fed. 426.

Charles C. Burlingham, for libelant.
Samuel Park, for claimant.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). It is unnecessary to consider the alleged negligence of the Seaboard for the reason that the value of the Flint is conceded to be less than the judgment against her for $12,029.43. The question of the Seaboard's negligence, therefore, becomes academic. This was frankly admitted upon the argument by the counsel for the libelant.

The faults for which the Flint was held liable by the court below were that she did not see the Seaboard soon enough and that she continued her course and speed after receiving no response to her signal of two whistles. It was thought that this was a grave fault with the vessels only about 1,000 feet apart and with the Seaboard continuing her attempt to pass ahead. The District Judge found that the vessels were within half a minute of each other when the Flint saw the Seaboard and that there was then no time for experiments. After the Flint had steadied on her course for the Harlem river, headed for Ninety-Seventh or Ninety-Eighth street, so as to pass below Mill Rock, she continued in that direction without change. The first signal to the Seaboard was when the vessels were 900 or 1,000 feet apart. The Seaboard did not reply; the Flint slowed down, but held her course. She then signaled a second time and, receiving no reply, she reversed, but she was still going ahead when the float struck the Seaboard. The Flint at this time certainly had the Seaboard on her own starboard hand and the vessels were on crossing courses. The rule applicable to such a situation would apply unless the previous action of the Seaboard in changing her course to avoid the Steinway renders it inapplicable. We incline to the opinion that the rule did apply, but it is unnecessary to decide the point as the negligence of the Flint is clearly established without reference thereto. The tide was against the Flint; she could easily have stopped without danger to herself or the floats. Instead of doing this she kept on although she had received no signal from the Seaboard and it was quite evident, as soon as the latter had cleared the ferryboat, that she intended to cross the bow of the Flint. The situation required immediate action and the obvious thing to do was to stop the headway of the Flint without a moment's delay. Even on the testimony of the master of the Flint ordinary prudence should have dictated the propriety of this maneuver. He says that he did not know which way the Seaboard was going, whether she was intending to take the east or the west channel, and yet he kept on across her bow and did not stop and back until he had failed to receive a response to his second signal. It is true that when this occurred the vessels were in close proximity, but no sufficient reason is given for the failure of the Flint to signal the Seaboard until she

was only "900 feet or 1,000 feet away." Of the 12 witnesses sworn all but 4 were examined in the presence of the District Judge, and even though we entertained doubt as to the negligence of the Flint we would not be disposed to disagree with the finding of the judge upon the facts.

The decree is affirmed with interest but, as both parties have appealed, without costs in this court.