THE ASHER J. HUDSON.

(Circuit Court of Appeals, Second Circuit. June 30, 1907.)

No. 262.

TOWAGE—ABANDONMENT OF TOW—LIABILITY OF TUG.

Evidence *held* to support the finding of the trial court that the leaking of a barge in tow which made it necessary to abandon her did not result from her grounding through the fault of the tug, but that it was due to her unseaworthy condition; and the tug also *held* not in fault for not sooner going in search of the barge after her crew had been taken off and she had gone adrift at sea in the night, in view of the belief of all parties that she had foundered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 36.]

Appeal from District Court of the United States for the Southern District of New York.

On appeal from a decree of the District Court for the Southern District of New York dismissing the libel of the owners of the barge Centi-

pede to recover damages alleged to have been occasioned by the negligence of the tug Asher J. Hudson in towing the barge onto the shoals after passing Winter Quarter Lightship and in subsequently abandoning her.

The facts fully appear in the opinion of the District Judge, which is reported in 145 Fed. 731.

LaRoy S. Gove, for appellants.

E. R. Baird, Jr., for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The principal question involved is one of fact, viz., Did the tug tow the barge on the shoals after passing Winter Quarter Lightship? The District Judge after hearing all the witnesses determined this question in favor of the tug and, even though the testimony were evenly balanced, we should not feel justified in reversing his finding under the well-known rule of this court. The Wallace B. Flint, 130. Fed. 339, 64 C. C. A. 584. Not only are we satisfied that the District Judge was right, but we are unable to see, after reading the record, how any other conclusion could have been reached. The burden was on the libelants to prove that the tug was at fault in towing the barge out of her true course into shoal water where she struck bottom, causing the leak which produced the disaster. Not only did they fail in this but the great preponderance of testimony proves to our satisfaction that the course taken by the tug was the proper and usual one and that the situation which made it necessary for the crew of the barge to abandon her was caused by her own unseaworthy condition.

There was no fault on the part of the tug after the crew had been taken from the water-logged barge. Everyone, including her own crew, expected her to sink and when it was discovered the next morning that she was missing the master of the tug was not required to leave the barge Camp and go in search of the Centipede, as he had every reason to believe that she was then at the bottom of the ocean. As soon as he heard that she was afloat he went to her assistance, but as she was then in charge of another tug his services were declined.

There were marks on the Centipede's bottom indicating that she had been aground somewhere, but the fact that she was beached inside of Sandy Hook and remained there for twenty-four hours is sufficient to account for this condition of her bottom. The theory that these injuries might have been caused at Sandy Hook is certainly more plausible than that of the libelants, which is disproved by the great preponderance of testimony. Although the bottom at the Hook is sandy there may have been hard substances where the Centipede was beached which, with the action of the wind and tide and the swells from passing steamers, might well account for the injuries.

It is enough, however, to say that it was incumbent upon the libelants to prove that the injuries to the bottom of the barge were caused by the negligent towing of the tug and this, as we have seen, they have wholly failed to do.

The decree is affirmed with interest and costs.